UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

UNITED STATES OF AMERICA

                                           Case No. S1 07 Cr. 566 (GBD)

      - v.-

DAVID WILKINS, KEITH CLARK, a/k/a
"Fat Boy," TERRENCE MCGEE, a/k/a "Tuffy,"
HORACE HEDGEPETH, a/k/a "Monte," SHANTA
BROWN, JAMAR JONES, a/k/a "Pooh Bear," a/k/a
"Pooh," TORY DELANEY, ROBIN MCMAHON,
a/k/a "Marlon," JAMES GILLIARD, a/k/a "Sos,"
a/k/a "Sosa," and MARK ATWATER,

                               Defendants.

------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT HORACE HEDGEPETH'S PRE-TRIAL MOTIONS

Defendant Horace Hedgepeth respectfully makes the following pre-trial motions: (1) to suppress evidence seized on May 23, 2007 as a result of a search at 247 W. 149th Street, House #3, Apt. 4B, New York, New York ("the apartment") on the grounds the evidence was seized as the result of an illegal search and seizure; (2) to suppress his post-arrest statement on the grounds that it was not the product of a valid waiver of rights; (3) for a bill of particulars; (4) permitting him to join in co-defendant's motions; and (5) for such other and further relief as the Court may deem just and proper. Mr. Hedgepeth also requests a hearing in order for the Court to fully consider his motions.

## STATEMENT OF FACTS

Mr. Hedgepeth is charged in a two-count Indictment returned by a grand jury in Southern District of New York. Count One of the Indictment generally alleges that Mr. Hedgepeth and nine co-defendants were involved in a conspiracy to sell cocaine and crack cocaine from on or about 2006 to May 2007. While Count One enumerates ten overt acts in furtherance of the alleged conspiracy, only two of these enumerated overt acts refer specifically to Mr. Hedgepeth by name. Count Two of the Indictment alleges that Mr. Hedgepeth, having previously been convicted of a felony, possessed a firearm, which had been shipped and transported in interstate and foreign commerce in violation of 18 U.S.C. § 922(g). In connection with Count Two, the Government intends to present evidence of a .40 caliber Glock semi-automatic handgun ("the firearm") which was seized from Hedgepeth's residence during a raid on May 23, 2007.

On May 23, 2007 at approximately 6:00 a.m., law enforcement officers ("the officers") raided the apartment where Mr. Hedgepeth resided. (Affidavit of Joseph W. DeFossett, dated January 31, 2008, hereinafter "DeFossett Aff." at ¶ 4). At the time of the raid, Mr. Hedgepeth was not present in the apartment. (DeFossett Aff. ¶ 5.) On that morning, Mr. DeFossett was awakened by the sound of pounding on the apartment door followed by the entrance of the officers. (DeFossett Aff. ¶ 4.) During the raid, Mr. DeFossett fully cooperated with the officers and answered a series of questions regarding Mr. Hedgepeth and his whereabouts. He also observed as officers questioned Mr. Hedgepeth's eldest son Lamont, about his father. (DeFossett Aff. ¶ 6.) Mr. DeFossett later observed several officers searching Mr. Hedgepeth's bedroom. (DeFossett Aff. ¶ 7.)

At no time did any officers ask Mr. DeFossett for his consent, nor did Mr. DeFossett give consent, to a search the apartment. (DeFossett Aff. ¶ 8.)

During the raid, the firearm was seized by Special Agent Dyer "in the inside pocket of a black leather jacket that was hanging in the closet of the rear bedroom of the apartment." (Declaration of Edgardo Ramos, dated February 1, 2008, hereinafter "Ramos Decl." Ex. A. at ¶5.)

At approximately 7:10 a.m. that same morning, Mr. Hedgepeth was arrested in the parking lot of his place of employment and was transported for processing and arraignment. (Ramos Decl. ¶ 5.) During that time, Mr. Hedgepeth was advised of his Miranda rights, but was questioned by law enforcement officers without having knowingly and voluntarily waived is rights. (Ramos Decl. ¶¶ 6, 7.)

By letter dated, August 8, 2007, the government advised that following Mr. Hedgepeth's arrest and "after being advised of and waiving his Miranda rights, the defendant stated, in sum and substance, the following: he received the gun in Pennsylvania in exchange for four bags of crack; he needed the gun for protection; and he carried the gun when he went to the projects because he had gotten shot." (Ramos Decl. Ex. B.)

## ARGUMENT

I.   **The Firearm Seized from Mr. Hedgepeth's Residence Should be Suppressed**

The admission of the firearm seized from the apartment should be suppressed because it was the product of an illegal search and seizure in violation of Hedgepeth's Fourth Amendment Rights. No search warrant was obtained and officers did not receive the requisite consent to conduct a warrantless search of the apartment. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990) (The Fourth Amendment generally prohibits the

3

warrantless entry of a person's home, whether to make an arrest or to search for specific objects.) (internal citations omitted); Mapp v. Ohio, 367 U.S. 643, 652 (1961). Further, the firearm was not seized as result of a permissible protective sweep, but rather an overbroad, impermissible search. Maryland v. Buie, 494 U.S. 325, 327 (1990) ("A 'protective sweep' is a quick and limited search of premises, incident an arrest and conducted to protect the safety of police officers and others.")

(a)     **Lack of Consent**

Under the Fourth Amendment, a search conducted without a warrant issued upon probable cause is "per se unreasonable . . . subject only to a few specifically established and well delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (internal citations omitted). "[O]ne of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent. Id. (internal citations omitted). "Consent to search a premises may be given by a third party who possesses common authority over or other sufficient relationship to the premises sought to be inspected." United States v. Tellier, No. 94-1451, 1996 U.S. App. LEXIS 10932, at *9-10 (2d Cir. May 10, 1996). The government bears the burden of establishing that a third-party has common authority to consent to the search. See Illinois v. Rodriguez, 497 U.S. 177, 181.

In this case, the government asserts that Mr. Hedgepeth's roommate, Mr. DeFossett consented to a search of the apartment. (Ramos Decl Ex. A at ¶ 3.) However, Mr. DeFossett was never asked by the officers for his consent to search the apartment nor did Mr. DeFossett give consent to a search of that apartment. (DeFossett Aff. ¶ 8.) Accordingly, the Government has not established that the search of the apartment was

4

conducted pursuant to the requisite consent and the fruits of that search should be suppressed. See Weeks v. United States, 232 U.S. 383 (1914) (the sanction for violating the Fourth Amendment is the exclusion of the evidence from use at trial.).

 (b) **Improper Protective Sweep**

When officers enter into a home pursuant to an arrest warrant, they may under certain circumstances conduct a protective sweep of the home without first obtaining a search warrant. Maryland v. Buie, 494 U.S. 325, 330 (1990). However, such protective sweeps are limited. Id. The Fourth Amendment standard for a protective sweep conducted in the course of an arrest was laid out by the Supreme Court in Buie, 494 U.S. 325, 330 (1990). The Buie Court held that "as an incident [to the] arrest" officers may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could immediately be launched." Id at 334. To justify a broader sweep, "there must be articulable facts which, taken together with rational inferences from those facts, would warrant a reasonable prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id.

The search conducted at the apartment is not salvageable as an appropriate protective sweep, and thus is not permissible under Buie. The search was not incident to an arrest. Further, the officers discovered the gun by searching the inside pocket of a jacket that was hanging in a closet in Mr. Hedgepeth's room. (See Ramos Decl. Ex. A at ¶ 5.)

Assuming arguendo that at the time of the search the officers suspected that Mr. Hedgepeth was hiding in the closet, there are no articulable facts that justify the search of the contents of a jacket located in the closet. The search clearly exceeded the permissible

scope of a protective sweep as authorized by Buie, 494 U.S. 325. Accordingly, for the reasons set forth above, the Court should suppress the admission of the firearm seized in the apartment on May 23, 2007.

II.     **Mr. Hedgepeth's Post-Arrest Statement Should be Suppressed**

A post-arrest statement made after the provision of a warning pursuant to Miranda v. Arizona is admissible only where the waiver thereby obtained is both voluntary and knowing. See Moran v. Burbine, 475 U.S. 412, 421 (1986). "To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." United States v. Male Juvenile, 121 F.3d 34, 39-40 (2d Cir. 1997) (quoting United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995) (per curium)). "Only if the totality of the circumstances 'reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.'" Id. The government bears the burden of proving the validity of the waiver and the voluntariness of the resulting confession. See Missouri v. Seibert, 542 U.S. 600, 608, n.1 (2004) (citations omitted); Lego v. Twomey, 404 U.S. 477, 482-84 (1972).

In this case, the government cannot sustain its burden of proving that Mr. Hedgepeth knowingly waived his Miranda rights. As a preliminary matter, although a written statement of waiver does not in an of itself establish validity, it does serve as evidence of a defendant's waiver. The government has presented no written statement evidencing Mr. Hedgepeth's waiver of his Miranda rights. North Carolina v. Butler, 441 U.S. 369, 373 (1979) ("An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that

6

waiver, but is not inevitably either necessary or sufficient to establish waiver.") On the morning of his arrest, Mr. Hedgepeth was advised of his Miranda rights, but he was questioned by law enforcement officers without knowingly or voluntarily waiving his Miranda rights. (Ramos Decl. at ¶¶ 6, 7.) Accordingly, the post-arrest statement should be suppressed.

### III. Bill of Particulars

#### (a) Factors in Considering a Motion for Bill of Particulars

The Federal Rules of Criminal Procedure provide that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). If the indictment does not sufficiently apprise a defendant of the essential facts of the crimes of which he has been accused, the Court may direct the Government to provide a bill of particulars. FED. R. CRIM. P. 7(f).

A court has very broad discretion to grant or deny a motion for a bill of particulars. United States v. Davidoff, 845 F.2d 1151, 1154 (2d Cir. 1988). "The principles governing requests for a bill of particulars are well settled. A bill is appropriate to permit a defendant 'to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense.'" Davidoff, 845 F.2d at 1154 (citing United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted) (per curiam)). Accordingly, the "decision whether to grant a bill of particulars rests within the district court's discretion." United States v. Chalmers, 410 F. Supp. 2d 278, 283 (S.D.N.Y. 2006).

7

A trial court should review a motion for a bill of particulars "with an awareness that an indictment may be sufficient on its face to state an offense, yet insufficient to adequately inform the accused of the charge against him to enable him to properly prepare his defense and, at least, to avoid prejudicial surprise." King v. United States, 402 F.2d 289, 292 (10th Cir. 1968) (citing Will v. United States, 389 U.S. 90 (1967)). Furthermore, disclosure by the government of "mountains of documents" is not an adequate substitute for a bill of particulars when the disclosure does not provide guidance regarding what the government would prove at trial. See Bortnovsky, 820 F.2d at 574-75.

Finally, in some circumstances where the government relies on evidence obtained through wiretaps, the Second Circuit has required the government to provide a bill of particulars. Davidoff, 845 F.2d at 1155. In Davidoff, the Second Circuit noted that the government's provision in advance of trial of "some 6,000 pages of material concerning wiretap applications and transcripts of wiretapped conversations" did not obviate the need for a bill of particulars. Id.

As discussed below, the Indictment fails to provide Mr. Hedgepeth with basic information needed to conduct an adequate pre-trial investigation. Mr. Hedgepeth is entitled to the particulars requested, and will be substantially prejudiced if they are not provided.

(b)    **Mr. Hedgepeth Needs Particulars in Order to Prepare his Defense**

Count One of the Indictment charges a conspiracy with two objects – to distribute, and possess with intent distribute cocaine and crack cocaine, in violation of the narcotics laws of the United States. The Indictment alleges numerous overt acts implicating ten

defendants over a period of 18 months. Only two of the overt acts enumerated in the Indictment explicitly refer to Mr. Hedgepeth. Mr. Hedgepeth's requested particulars seek only such additional details of any illegal acts that he allegedly engaged in so that he may properly investigate the circumstances of those acts, and prepare his defense.

### (1) Details Surrounding the Alleged Illegal Acts

There is a special concern for particularization in conspiracy cases. See Davidoff, 845 F.2d 1151. Where, as here, the charge against the defendant is broad in scope, a bill of particulars may be more appropriate than where the charged conduct is narrower. In United States v. Barnes, the Second Circuit noted that a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the "bare bones" of the charge. 158 F.3d 662, 666 (2d Cir. 1998). Similarly, the Second Circuit found that a district court abused its discretion in denying a bill of particulars identifying victims in a multi-year RICO conspiracy. Davidoff, 845 F.2d at 1154-55.

The information provided to Mr. Hedgepeth thus far is simply insufficient to allow him to adequately investigate the allegations against him or prepare a defense. For example, Count One of the Indictment alleges in part:

> On or about October 17, 2006, WILKINS and HORACE HEDGEPETH, a/k/a "Monte," the defendants, had a telephone conversation during which they spoke about HEDGEPETH getting narcotics from WILKINS;
>
> . . .
>
> On or about September 30, 2006, WILKINS and JAMES GILLIARD, a/k/a "Sos," a/k/a "Sosa," the defendants, had a telephone conversation during which they spoke about GILLIARD getting narcotics from WILKINS and HEDGEPETH.

The additional discovery that has been provided, which consists primarily of wiretap line sheets, do not include conversations that explicitly concern the distribution of narcotics, much less the type of narcotic involved. Similarly absent are details concerning the location of alleged narcotics transactions, the participants in those transactions, and the amount of narcotics involved.

Due to the limited information provided in the Indictment and discovery that has been produced, Mr. Hedgepeth cannot determine how many and which, if any, alleged substantive narcotics transactions the government intends to prove. Mr. Hedgepeth therefore lacks the information necessary to conduct his own investigations and mount a defense.

    **(2)**    **Discovery Has Not Cured the Need for a Bill of Particulars**

Mr. Hedgepeth has taken care to craft a request for particulars that seeks only the essential information he needs to conduct his own investigation of the government's allegations. While the government has given hundreds of pages of documents pursuant to its discovery obligations, the provision of this discovery does not obviate the need for a bill of particulars. Critically, the Government does not fulfill its obligation to inform a defendant of the charges against him by providing "mountains of documents" as this is not an adequate substitute for a bill of particulars when the disclosure does not provide guidance regarding what the Government will seek to prove. See Bortnovsky, 820 F.2d at 574-75. Here, Mr. Hedgepeth seeks legitimate information necessary to properly prepare for trial and to avoid the prejudice inherent in surprise evidence.

### (c) There are No Countervailing Government Interests that Preclude Providing the Requested

In considering Mr. Hedgepeth's motion for a bill of particulars, this Court must balance Mr. Hedgepeth's legitimate interest in securing information relating to allegations in the Indictment with countervailing considerations such as the personal security of witnesses or whether unfairness to the Government could result from forcing the Government to commit to a specific version of the facts at this time. United States v. Rosa, 891 F.2d 1063, 1066 (3d Cir. 1989). As demonstrated above, ordering the requested bill of particulars will not prejudice the Government because Mr. Hedgepeth only asks for the most basic information necessary to effectively conduct his own investigation to prepare for trial: the details of his own alleged unlawful acts. Without such crucial information, in effect the burden of proof impermissibly will shift to Mr. Hedgepeth. Cf. Bortnovsky, 820 at 574-75 (conviction reversed where trial court denied motion for bill of particulars requesting dates of allegedly staged burglaries and enumeration of documents allegedly falsified).

## CONCLUSION

For the foregoing reasons, defendant Horace Hedgepeth respectfully requests that this Court grant his pretrial motions: (1) to suppress evidence seized on May 23, 2007 as a result of a search at 247 W. 149th Street, House #3, Apt. 4B, New York, New York; (2) to suppress his post-arrest statement on the grounds that it was not the product of a valid waiver of rights; (3) for a bill of particulars; (4) permitting him to join in co-defendant's

motions; and (5) for such other and further relief as the Court may deem just and proper.

                        Day Pitney LLP
                        Attorneys for Defendant
                        Horace Hedgepeth

                        By: /s/ *Edgardo Ramos*
                              EDGARDO RAMOS (ER6846)
                              A Member of the Firm

Dated: February 1, 2008